IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TEACHERS UNION, LOCAL 1, ) <br> AMERICAN FEDERAL OF TEACHERS, ) <br> AFL-CIO, TERRI FELLS, LILLIAN ) <br> EDMONDS, and JOSEPHINE HAMILTON ) <br> PERRY, individually and on behalf of all ) <br> similarly situated persons, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BOARD OF EDUCATION OF THE CITY ) <br> OF CHICAGO, a body politic and corporate, ) <br> ) <br> Defendant. ) | Case No. 12 C 10338 |

## MEMORANDUM OPINION AND ORDER

On April 11 of this year, nearly 4-1/2 years after this action was first brought, plaintiffs Chicago Teachers Union, Local 1, American Federal of Teachers, AFL-CIO, Terri Fells, Lillian Edmonds and Josephine Hamilton Perry[1] filed a "Motion for Leave To File Second Amended Complaint and To Clarify the Class Definition" (Dkt. No. 159). That motion has met with vigorous opposition in a bulky submission by defendant Board of Education of the City of Chicago ("Board") (Dkt. No. 161), and issue has now been fully joined by Teachers Union's just-filed response to Board's opposition (Dkt. No. 164). This opinion hastens to rule on the parties' dispute so that the case can go forward.

---

[1] For convenience in the discussion in this opinion, plaintiffs will simply be spoken of collectively as "Teachers Union," treated as a singular noun.

In principal part though not entirely, the litigants' quarrel stems from the definition of the putative class as originally designated in the Complaint and certified by this Court on May 22, 2015 (Dkt. No. 96). Here is how that class certification read:

> All African American persons whose employment as a tenured teacher or staff member, as defined by the Collective Bargaining Agreement between the Chicago Teachers Union and the Board of Education of the City of Chicago, was terminated by the Board of Education pursuant to its "layoff policies" in 2011.

And because the choice of terminology by Teachers Union's counsel used the word "terminated" in what must be recognized as an awkward sense, the proposed Second Amended Complaint is sought by that counsel to "clarify" the original definition to read:

> All African American persons employed as a tenured teacher or staff member, as defined by the collective bargaining agreement between the Chicago Teachers Union and the Board of Education of the City of Chicago, who received a layoff notice from the Board of Education pursuant to its "layoff policy" in 2011.

What has emerged from the parties' dispute is a classic illustration of what has caused a line from the movie Cool Hand Luke to become embedded in American speech:

> What we have here is a failure to communicate.

It is certainly regrettable that counsel on both sides of the "v." sign have not sought assistance from knowledgeable patent lawyers, for if that had been the case a Markman hearing would long since have been teed up for decision, thereby avoiding the current situation in which each side has generated a statistical analysis shaped by its own view. Although this Court faults Teachers Union's counsel for the understandable confusion created by their use of the word "terminated" when it is looked at in isolation,[2] this Court does not write on a clean slate in this area. Instead it

---

[2] Some possible justification for that usage might stem from the doctrine announced nearly four decades ago in Delaware State Coll. v. Ricks, 449 U.S. 250 (1980), which used the word "termination" to describe an announcement to an employee of his or her future fate, thus
(continued)

has gone back to the parties' Joint Report of Rule 26(f) Conference (Dkt. No. 117), filed last June at the instance of Magistrate Judge Susan Cox, to whom the case had been referred for that purpose. At that time the brief description provided by counsel for the Teachers Union included this statement:

> Plaintiffs allege that Defendant used discriminatory processes and factors, including projected student enrollment that disproportionately selected schools in the predominately African American South and West sides of Chicago for layoffs. In turn, Defendant laid off disproportionate numbers of African American teachers and staff.

In turn Board's counsel provided this brief description:

> The class has alleged that layoffs by the Chicago Board of Education at the conclusion of the 2010-2011 school year had a disparate impact on African American members of the Chicago Teachers Union ("CTU").
>
> The Board of Education denies that it discriminated against African American CTU members in the 2011 layoffs, and denies any liability to the Plaintiff class.

And consistently with those descriptions, the same joint report listed this as a subject on which discovery was needed:

> Whether there was an adverse impact on African-American CTU members in connection with layoffs that occurred following the 2010-2011 school year.

That joint recognition by counsel for the parties almost a year ago is unsurprising, for pages 3 through 9 of Teachers Union's Dkt. No. 164 response set out in almost excruciating detail the consistently repeated treatment by Teachers Union's counsel from the time of filing of

---

(footnote continued)
constituting an "unlawful employment practice" that starts the ticking of the statute of limitations clock (rather than such ticking being deferred until the employee's actual later separation from his or her employment). Even so, this Court still finds the unusual usage by counsel for Teachers Union puzzling.

- 3 -

the First Amended Complaint in December 2012 throughout the ensuing periods of early discovery, throughout the time period that culminated in the successful motion for class certification, throughout the post-certification discovery period and during the March 2016 deposition of designated Fed. R. Civ. P. 30(b)(6) deponent Pavlyn Jankov just a bit over a year ago, during which he rejected what he characterized as Board's "narrow definition" of "termination of employment" and expressed stated in part:

> Our position is that they were terminated at that point in time on receipt of the layoff notice.

All of that said, Board's counsel now complain that they were led down the garden path by the presence of what they view as the poison-pill word "terminated" in the original class definition language employed by counsel for Teachers Union, having then assertedly relied on that word by expending time and money in discovery and ultimately in the report by their opinion witness Dr. David Blanchflower that employed the word in its more common usage. But that complaint must be characterized as totally ostrichlike in light of what has been described here. And if that were not enough (and it is), any claimed lack of understanding on that point had to be dispelled by opinion witness Dr. Jonathan Walker's Rule 26(a)(2) report (Dkt. No. 161-2) that said the 2011 layoffs "had an astronomical statistically significant disparate impact on African-American teachers and staff based on Plaintiffs' formulation of the class" (Plaintiffs' current Response Dkt. No. 164 at 2).

With the existence of the current dispute having been so clearly demarcated throughout that extended period, there is no excuse for Board to have continued down its version of the lexicographic path rather than bringing the dispute before this Court for resolution. In sum,

whatever might be said as to a possible claim for some reimbursement for its expenses under quite different circumstances, that does not at all appear to be called for here.

As has been made clear in this opinion, this Court now grants the current Teachers Union Dkt. No. 159 motion. This opinion's issuance has been accelerated to enable the earlier scheduled May 1 status hearing to be held, at this point for purposes of discussing the future course of the litigation.

                                                                                                   
Milton I. Shadur
Senior United States District Judge

Date: April 28, 2017