IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TEACHERS UNION ) | |
| LOCAL 1, AMERICAN FEDERATION ) | |
| OF TEACHERS, AFL-CIO, et al., ) | |
| ) | Case No. 12 C 10338 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| BOARD OF EDUCATION OF THE CITY ) | |
| OF CHICAGO, a body politic and corporate, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Plaintiff/Counter-Defendant Chicago Teachers Union ("CTU") to dismiss the counterclaim of Defendant/Counter-Plaintiff Board of Education of the City of Chicago ("Board"). CTU also moves to strike the Board's third affirmative defense. For the following reasons, the Court grants CTU's motion as to the counterclaim and denies the motion as to the third affirmative defense.

## BACKGROUND

In 2012, CTU, a labor organization representing teachers employed by the Board, brought this class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. CTU alleges the Board violated Title VII by engaging in a pattern and practice of racial discrimination through its layoff policy, which had a disparate impact on African American teachers and para-professionals.

After CTU filed its Second Amended Complaint, the Board filed its Answer, which included affirmative defenses and a counterclaim. (Pl.'s 2d Am. Compl., Dkt. # 167; *see also* Def.'s Answer, Dkt. # 178.) The Board's counterclaim alleges that CTU breached the implied

duty of good faith and fair dealing arising out of the 2007-2012 collective bargaining agreement ("CBA") between CTU and the Board by filing this class action case, which allegedly interferes with the Board's right to receive the "fruits" of the CBA and violates CTU's own constitution and bylaws to the extent it advocates on behalf of some members to the detriment of others. (*See* Def.'s Answer, Dkt. # 178, pp. 35-39, ¶¶ 4-8, 17-25.)

In its answer, the Board pleaded three affirmative defenses, the third alleging that CTU lacks standing to be a class representative. The crux of the third affirmative defense, which overlaps with parts of the counterclaim, is that CTU violated its own constitution in bringing its lawsuit because CTU's House of Delegates did not authorize the lawsuit and because the lawsuit promotes the interest of some CTU members to the possible detriment of other members. (*See* Def.'s Answer, Dkt. # 178, pp. 33-34, ¶¶ 1-7.) CTU has moved to dismiss the Board's counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and to strike the Board's third affirmative defense pursuant to Fed. R. Civ. P. 12(f).

## **DISCUSSION**

**I.   Motion to Dismiss**

A Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "a short and plain statement of the claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level," *Twombly*, 550 U.S. at 555, by including "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Similarly, when considering a Rule 12(b)(1) motion to dismiss, a district court accepts as true all well-pleaded factual allegations and draws reasonable inferences from the allegations in favor of the pleading party. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604 (7th Cir. 2008) (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)).

### A. Breach of Implied Covenant

In support of its motion to dismiss, CTU argues that the Board's allegations that CTU breached the implied duty of good faith and fair dealing in the CBA by filing this lawsuit fail to state a claim.

As CTU correctly explains, there is no stand-alone cause of action for breach of the implied covenant of good faith and fair dealing under Illinois law. Every contract contains an implied covenant of good faith and fair dealing, but the implied covenant is not an independent source of duties; rather, it guides the interpretation of the terms of the contract. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992); *see also Voyles v. Sania Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001) (recognizing that the implied duty of good faith and fair dealing is generally not "'an independent source of duties giving rise to a cause of action in tort'") (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.3d 897, 903 (Ill. 1996)). Where a contract

3

vests one of the parties with discretion in performing an obligation, and that party exercises that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties, the party breaches the implied covenant of good faith and fair dealing. *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792-93 (N.D. Ill. 2010). But "[t]he covenant . . . does not enable a [party] to read an obligation into a contract that does not exist." *N. Tr. Co. v. VIII S. Michigan Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995). "To properly allege breach of the covenant, a party must plead the existence of contractual discretion," *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 824 (N.D. Ill. 2010) (emphasis added), by identifying provisions of the contract that vest the opposing party with discretion. *See Bank One, Springfield v. Roscetti*, 723 N.E.2d 755, 764 (Ill. App. Ct. 1999). The party asserting the claim must identify "in the express contract of the parties a satisfactory basis which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties making the contract." *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. Ct. 2004).

The Board does not identify any provisions of the CBA that vest CTU with discretion either that CTU exercised unfairly or that might have served as the basis for the action that the Board complains of in its counterclaim, *i.e.*, filing this lawsuit. (*See* Def.'s Answer, Dkt. # 178, pp. 35-39.) This deficiency warrants dismissal. *See, e.g.*, *Bywater v. Wells Fargo Bank, N.A.*, 2014 WL 1256103, at *7 (N.D. Ill. 2014) (noting plaintiff's failure to plead contractual discretion meant "her breach of good faith allegation would not be sufficient standing alone to state a claim for breach of contract."). The Court agrees with CTU that the Board does not state a claim for breach of contract based on a theory of breach of the implied covenant of good faith and fair dealing in the CBA.

B. "Preemption" under IELRA

CTU argues that there is a still more fundamental reason why the Board's counterclaim must be dismissed: the claim is "preempted"[1] by the Illinois Educational Labor Relations Act ("IELRA"), the labor statute that governs the CBA.

Federal courts frequently hold that a claim for breach of the covenant of good faith and fair dealing arising out of a collective bargaining agreement governed by a labor statute such as, for example, the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 *et seq.*, is preempted by that statute, to the extent that the claim depends on interpretation of the collective bargaining agreement. *See, e.g., Bader v. United Airlines, Inc.*, 113 F. Supp. 3d 981, 989-90 (N.D. Ill. 2015) (citing cases decided under the LMRA); *see also Debock v. United Parcel Serv., Inc.*, No. 15cv447, 2015 WL 7428561, at *3 (D. Nev. Nov. 20, 2015) (breach of contract and breach of implied covenant claims are "classic examples of claims consistently preempted by § 301" of the LMRA); *Kwasnik v. Nat'l R.R. Passenger Corp.*, No. 96 C 1933, 1997 WL 109977, at *4 (N.D. Ill. Mar. 7, 1997) (reaching a similar result under Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*). CTU argues that a similar principle applies to this case under the IELRA: when a

---

[1] Preemption is the constitutional-law principle that federal law can supersede state or local law in certain circumstances. Although the parties use this term in their briefs, it is not directly implicated here, where the issue is whether a state statute precludes courts from exercising jurisdiction over a state common-law claim. *See Ferkel v. Bd. of Educ. of Chi.*, 45 F. Supp. 3d 824, 837 (N.D. Ill. 2014) ("Although the Court understands that the Board is trying to analogize to the preemptive effect of federal labor law, in this state-law context, it is more appropriate to ask whether the [IELRB] has exclusive jurisdiction to review Plaintiffs' contract claim."). The use of the term "preemption" in similar circumstances is not uncommon, *see, e.g., Masud v. Rohr-Grove Motors, Inc.*, No. 13 C 6419, 2015 WL 5950712, at *7-8 (N.D. Ill. Oct. 13, 2015) (using the term "preemption" to discuss whether the Illinois Human Rights Act precludes courts from exercising jurisdiction over state tort claims related to sexual harassment, and citing cases that do the same), but in this Opinion the Court will discuss both constitutional-law preemption and what is sometimes called "preemption" by analogy, *i.e.* a state statute's precluding courts from exercising jurisdiction over common-law claims. The Court will attempt to avoid confusion by generally using the term only in the constitutional-law sense, or otherwise putting it in quotation marks.

party seeks to assert a claim for breach of a collective bargaining agreement that requires interpretation of the agreement, original jurisdiction over the matter resides exclusively with the Illinois Educational Labor Relations Board ("IELRB"). *See* 115 ILCS 5/15 ("A charge of unfair labor practice may be filed with the [IELRB] by an employer, an individual or a labor organization."); *see also* 115 ILCS 5/14(b) (defining unfair labor practices of a labor union, in pertinent part, as "(1) Restraining or coercing employees in the exercise of the rights guaranteed under this Act . . . [or] (3) Refusing to bargain collectively in good faith with an educational employer"); 115 ILCS 5/16 (providing for judicial review of IELRB decision only in "the Appellate Court of a judicial district in which the Board maintains an office").

The Illinois Supreme Court has never directly addressed whether the IELRA divests courts of jurisdiction to hear common-law claims for breach of a collective bargaining agreement, but it has held that "the legislature intended to divest the circuit courts of primary jurisdiction over educational labor arbitration awards" and "grant[] the [IELRB] exclusive primary jurisdiction over arbitration disputes." *Bd. of Educ. of Cmty. Sch. Dist. No. 1, Coles Cty. v. Compton*, 526 N.E.2d 149, 151-53 (Ill. 1988). Thus, under *Compton*, a party who seeks to challenge or vacate an arbitration award assessed under the IELRA must file a charge of an unfair labor practice with the IELRB; he may not seek relief from a court directly, because the court would lack jurisdiction. The court reasoned that "[i]f jurisdiction over an award is to be divided between the [IELRB] and the circuit courts, it will often be difficult to know in advance where suit should be brought. Conflicting judgments and forum shopping will imperil the uniformity which the [IELRA] obviously seeks to achieve." *Id.* at 152.

According to CTU, it follows from this reasoning, which recognizes the importance of avoiding "conflicting judgments and forum shopping," that the IELRB has exclusive jurisdiction

6

over a breach of contract claim arising out of and requiring interpretation of the CBA, such as the Board's counterclaim. The Board responds that *Compton* does not apply to this case because the Board is not seeking to vacate an arbitration award, and according to the Board, nothing in the text of the IELRA or *Compton* bars the Board from asserting its breach of contract claim. But the Board reads *Compton* too narrowly. In *Compton*, the court recognized that "refusing to comply with the provisions of a binding arbitration award" was an unfair labor practice, and therefore a party complaining of an arbitration award must assert its claim before the IELRB, pursuant to the IELRA's prescribed procedure for asserting claims of unfair labor practices, in order to avoid "conflicting judgments and forum shopping" and preserve the "uniformity which the [IELRA] obviously seeks to achieve." *Id.* at 151-53. The reasoning of the decision does not apply only to arbitration awards. What *Compton* teaches is that, for compelling policy reasons, the IELRA requires state-law claims based on disputed interpretations of collective bargaining agreements or misconduct fitting the statute's definition of unfair labor practices[2] to be asserted before the IELRB, pursuant to the dispute-resolution scheme that the statute prescribes.

Numerous Illinois decisions reveal the strong policy rationale for raising claims requiring interpretation of a collective bargaining agreement exclusively before the relevant labor relations board in order to avoid the uncertainty that would come from conflicting judicial interpretations of such agreements. Particularly persuasive is *Cessna v. City of Danville*, 693 N.E.2d 1264,

---

[2] The Board contends that its counterclaim is outside the scope of the IELRB's exclusive jurisdiction because it is not based on an "unfair labor practice," as the term is defined in 115 ILCS 5/14(b)(1)-(6). Even assuming the Board is correct that it is strictly necessary for CTU's alleged misconduct to fit within one of section 14(b)'s six definitions, the Court is not persuaded that it does not. The definitions of the unfair labor practices in subsections (1) ("restraining or coercing employees in exercising their rights under the [IELRA]") and (3) ("refusing to bargain collectively in good faith with an educational employer") are fair descriptions of the allegations of the Board's counterclaim. Under the dispute-resolution scheme that the IELRA prescribes, the Board's counterclaim presents the sort of dispute that the Illinois General Assembly intended to be resolved before the IELRB, not in the courts.

1270-71 (Ill. App. Ct. 1998), in which the Illinois Appellate Court held that an employee complaining that she was discharged in violation of the terms of a collective bargaining agreement governed by the Illinois Public Labor Relations Act ("IPLRA"), 5 ILCS 315/1 *et seq.*, could not assert a breach of contract claim against her former employer in an Illinois circuit court. According to the court, the Illinois State Labor Relations Board ("ISLRB") has exclusive jurisdiction over such claims, to the extent that they require interpreting the collective bargaining agreement. *Id.* The court found guidance in decisions of the Illinois Supreme Court and the United States Supreme Court, both of which had recognized that the LMRA preempts state-law claims that require interpretation of a collective bargaining agreement because "section 301 of the LMRA 'mandated resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes.'" *Id.* (citing *Gonzalez v. Prestress Eng'g Corp.*, 503 N.E.2d 308, 313 (Ill. 1986) and quoting *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988)). The IPRLA, the court explained, has the same policy goal.

The IPRLA specifically states that the purpose of the statute is to "regulate labor relations between public employers and employees, including . . . resolution of disputes arising under collective bargaining agreements," and it specifically provides that people appointed to the ISLRB must have professional experience in the field of labor relations to ensure that they have a "certain level of expertise."[3] *Cessna*, 693 N.E.2d at 1271. Based on this textual evidence and on the principles articulated in *Gonzalez* and *Lingle*, the *Cessna* court explained, it "would undermine the [IPLRA]'s stated purpose and frustrate the legislature's intent to provide a uniform body of law . . . to be administered by those who have the required expertise in this

---

[3] The IELRA is virtually identical in these respects. *See* 115 ILCS 5/1, 115 ILCS 5/5.

8

area" to permit aggrieved parties to a collective bargaining agreement to bypass the ISLRB to seek judicial relief, which might result in conflicting interpretations of the collective bargaining agreement. *Id*. at 1272. The *Cessna* plaintiff's claim—that her employer "wrongfully discharged her and arbitrarily applied to her certain rules and regulations promulgated pursuant to the [collective bargaining agreement—could not] be addressed by the [trial] court without interpreting the [collective bargaining agreement] and viewing the [employer's] alleged actions in light of this interpretation," so the trial court lacked jurisdiction. *Id.* at 1270.

Although the Board argues that cases like *Cessna*, decided under the IPLRA, do not apply to this case because the CBA is governed by the IELRA, the IPLRA "was adopted in the same legislative session" as the IELRA, and "[t]he two acts together were an attempt to provide a comprehensive regulatory scheme for public sector bargaining in Illinois." *Compton*, 526 N.E.2d at 152 (internal quotation marks omitted). A similar underlying policy animated both statutes, and therefore *Cessna*'s policy rationale of avoiding inconsistent interpretations of collective bargaining agreements applies to the IELRA as well—just as courts, in decisions such as *Cessna*, have applied *Compton*'s policy rationale to the IPLRA. *See Foley v. Am. Fed'n of State, Cty., & Mun. Emps., etc.*, 556 N.E.2d 581, 584 (Ill. App. Ct. 1990) (reasoning that "the *Compton* policy concerns," particularly "inconsistent judgments and forum shopping," are "equally applicable" under the IPLRA); *see also Cessna*, 693 N.E.2d at 1268 (holding that trial courts do not have concurrent jurisdiction over duty of fair representation claims against IPLRA-governed unions based on the "*Compton* policy rationale" for requiring disputes to be raised before the appropriate labor relations board). The policy rationale driving the decision in *Cessna* is applicable here, despite the fact that *Cessna* addressed a different labor statute.

The Board also attempts to distinguish cases like *Cessna* by pointing out a textual difference between the IPLRA from the IELRA: the IPLRA provides that the ISLRB "*shall* have jurisdiction over collective bargaining matters," 5 ILCS 315/5(a-5) (emphasis added), whereas the IELRA states that a charge of unfair labor practice "*may* be filed with the [IELRB]," 115 ILCS 5/15 (emphasis added). The language the Board cites cannot bear the interpretation the Board gives it. First, section 5(a-5) does not state that the ISLRB "shall have jurisdiction over collective bargaining matters"; section 5 divides the ISLRB into two panels, a State Panel and a Local Panel, and section 5(a-5) provides that the State Panel "shall have jurisdiction over collective bargaining matters" involving most categories of public employees, whereas the Local Panel "shall have jurisdiction over collective bargaining matters" involving employees of large municipalities, *see* 5 ILCS 315/5(b). The language the Board cites merely divides responsibility between the two panels; it has nothing to do with whether a court may exercise jurisdiction over a claim of breach of the collective bargaining agreement.

As for the IELRA's provision that a charge of unfair labor practice "may be filed with the [IELRB]," in that regard the statute tracks the language of section 301 of the LMRA, 29 U.S.C. § 185 ("Suits for violation of contracts between an employer and a labor organization . . . *may be brought* in any district court of the United States") (emphasis added), and the use of the word "may" did not prevent the United States Supreme Court from holding that, if a dispute depends on interpretation of a collective bargaining agreement, it must be resolved by relying not on state law but on "federal labor-law principles [that are] necessarily uniform throughout the Nation." *See Lingle*, 486 U.S. at 403-06. Illinois courts interpreting Illinois labor statutes have been guided by the Supreme Court's interpretation of the LMRA and by the important policy goal of "uniform interpretation of collective-bargaining agreements." *See Cessna*, 693 N.E.2d at 1270-

71 (quoting *Lingle*, 486 U.S. at 404). In light of the legislative intent "to provide a uniform body of law . . . to be administered by those who have the required expertise in this area," *see Cessna*, 693 N.E.2d at 1272, this Court concludes that the IELRB has exclusive jurisdiction over any state-law claim that requires interpretation of the CBA.

The Board's counterclaim certainly requires interpretation of the CBA. The Board alleges that CTU breached the implied covenant of good faith and fair dealing arising out of the CBA. (*See* Def.'s Answer, Dkt. # 178, pp. 35-36, ¶¶ 4-5.) The Board references sections of the CBA and attaches the entire CBA to its Answer. (*See id.* at p. 36, ¶¶ 9-11; *see also id*, Ex. 1.) As the Court has already explained above, the implied covenant of good faith and fair dealing is not an independent source of contractual duties but rather a tool that guides the interpretation of terms of a contract. *Beraha*, 956 F.2d at 1443. The Court has already explained that the present version of the counterclaim fails to state a claim, but even if the Board were able to amend it to do so, the Board would have to show that the terms of the CBA vested CTU with discretion to perform its contractual obligations and that CTU exercised that discretion in bad faith, thereby breaching the implied duty. *See Hickman*, 683 F. Supp. 2d at 792. Resolving the Board's counterclaim would require the Court to interpret the CBA to determine if CTU had any relevant contractual discretion. Because the IELRA divests this Court of jurisdiction to hear claims that require it to interpret the CBA, and because any breach of implied covenant claim would necessarily do so, the Board cannot state a claim that this Court has the power to hear.

CTU also argues that the Court should decline to exercise supplemental jurisdiction over the Board's counterclaim. Because the Court concludes that the IELRA divests trial courts of jurisdiction over claims such as the Board's, it need not address the parties' arguments concerning supplemental jurisdiction.

11

## II. Motion to Strike

CTU moves to strike the Board's third affirmative defense pursuant to Rule 12(f), which allows a court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

"Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "Motions to strike are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quotations omitted). "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure. Thus, defenses must set forth a 'short and plain statement' of the defense." *Heller Fin., Inc.*, 883 F.2d at 1294 (citing Fed.R.Civ.P. 8(a)) (internal citations omitted). Affirmative defenses must also contain sufficient factual material that, when taken as true, meet the *Twombly/Iqbal* plausibility standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Mussat v. Power Liens, LLC*, 2014 WL 4979862, at *1 (N.D. Ill. 2014) (applying plausibility standard to affirmative defense pleadings); *Bank of Montreal v. SK Foods, LLC*, 2009 WL 3824668, at *4 (N.D. Ill. 2009) (same).

The Board's third affirmative defense states that CTU lacks standing to be a class representative. (*See* Def.'s Answer, Dkt. # 178, pp. 33-34, ¶¶ 1-7.) The Board alleges that CTU's constitution prohibits it from making distinctions among its members based on race, from taking actions affecting its members without first consulting counsel for those members, and from taking action to promote certain members without first getting approval from CTU's House of Delegates that the action is in the interest of CTU as a whole. (*See id*. at ¶ 2.) The Board alleges

that CTU's House of Delegates never authorized the instant lawsuit, and that CTU is creating a conflict among its members because, if CTU ultimately prevails, certain CTU members "could displace CTU members with more seniority and/or of a different race." (*See id*. at ¶¶ 3-5.) Thus, the argument goes, because this action violates CTU's constitution in multiple ways, CTU lacks standing to bring this suit as a class representative or an individual plaintiff. (*See id*. at ¶ 6.)

CTU moves to strike the Board's affirmative defense, arguing essentially that CTU has already been found to have standing and to be an adequate class representative. (*See* Order on Motion to Dismiss, Dkt. #37; *see also* Order on Class Certification, Dkt. #96.) CTU argues the affirmative defense is therefore an improper attempt to relitigate this issue and should be stricken. The Court disagrees.

The Board previously moved to dismiss for lack of standing, and in his Memorandum Opinion and Order denying the motion, Judge Shadur analyzed the issue in detail; the Court need not rehash the analysis here. (*See* Order on Motion to Dismiss, Dkt. #37, pp. 4-15.) But just as Judge Shadur ruled that he could not, without "more factual development," find that CTU did not have standing as a matter of law, the Court cannot say now that the Board's affirmative defense is implausible on its face. The Board's allegations, taken as true as they must be, plausibly state that the instant suit could create a direct detriment to the interest of some of CTU's members and that the instant suit is not properly authorized. *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 864 (7th Cir. 1996). In arguing to the contrary, CTU's reliance on earlier decisions in this case—where the procedural "shoe" was on the other foot—is misplaced.

Lastly, insofar as CTU argues the Board's affirmative defense is not proper because it is not listed under Fed. R. Civ. P. 8(c), the list is, of course, nonexhaustive. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *see also Lueders v. 3M Co.*, 2008 WL 11374370, at *5 (C.D. Ill. 2008)

(denying motion to strike affirmative defense alleging the plaintiff was not a proper class representative).

## **CONCLUSION**

For the foregoing reasons, CTU's motion [186] is granted in part and denied in part. It is granted as to the counterclaim, which is dismissed for lack of subject matter jurisdiction. It is denied as to the Board's third affirmative defense.

**SO ORDERED.**

                                                  **ENTERED: March 30, 2018**

                                                  **HON. JORGE L. ALONSO**
                                                  **United States District Judge**